In re Michael P. FARINA, d/b/a The Five Chimneys Inn, Province Lake Country Club, and a/k/a M. F. Trust, Debtor.

Michael P. FARINA, Plaintiff,

v.

FORD MOTOR CREDIT COMPANY, and South Shore Bank, Defendants.

Bankruptcy No. 280–00164.
Adv. No. 280–0108.

United States Bankruptcy Court,
D. Maine.

Feb. 27, 1981.

Richard E. Poulos, Portland, Me., for plaintiff.

Thomas A. Cox, Portland, Me., for defendants.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

This proceeding was commenced November 19, 1980 by a complaint of the Debtor in Possession, seeking authorization to sell certain property free and clear of any interest therein and a determination of the validity and perfection of liens.

On December 18, 1980, Defendant Ford Motor Company Credit Company ("Ford") filed a counterclaim with its answer, seeking relief from the automatic stay with regard to property, a Ford tractor, which Debtor sought authority to sell. 11 U.S.C. § 362(d). A hearing was held January 22, 1981 on the issues raised in both the complaint and the counterclaim.[1]

The Debtor's complaint contains an allegation that ownership of the tractor is not necessary to the Debtor's plan of reorganization and that it would be in the best interest of creditors for such property to be sold free and clear of liens, with the alleged lien of Ford to attach to the proceeds of sale pending a determination, by this Court, of the validity and perfection of Ford's interest.

The Debtor argues that proper perfection of Ford's security interest in the tractor is in bona fide dispute because Ford filed a financing statement only with the Office of the Secretary of State for Maine and not with the proper recording official in both Maine and New Hampshire.

Ford denies that its security interest is in bona fide dispute. It asserts that its security interest is properly perfected by filing with the Maine Secretary of State. It further argues that the Debtor has conceded

---

1. A separate hearing has been scheduled with respect to the Debtor's claim against South Shore Bank. That claim will not be treated in this decision.

that it has no equity in the property and that such property is not necessary to an effective reorganization and that Ford, therefore, is entitled to relief from the Section 362(a) automatic stay.

The Court concludes that Ford is entitled to relief from the stay.

The Debtor has owned and operated The Five Chimneys Inn and Province Lake Country Club since April of 1979. The property consists of a golf course, restaurant, inn, lounge and pro shop located on the Maine and New Hampshire border.

The real estate contains approximately 150 acres of land, of which 14 acres extend into New Hampshire. The remaining land and all of the structures situated thereon, which include Michael Farina's personal residence, are all located in Parsonsfield, Maine. The golf course has nine holes, of which three extend into New Hampshire.

On December 19, 1979, the Debtor purchased the tractor, which is the subject of this proceeding, from Thompson Machine, Inc. in Westbrook, Maine. The parties entered into a security agreement covering the tractor on that date and the seller's interest in the security agreement was assigned to the Defendant Ford Motor Credit Company.

A financing statement (UCC–1) was filed with the office of the Secretary of State, Augusta, Maine on December 20, 1979.

The tractor was purchased by the Debtor primarily for business use on the Province Lake Country Club. However, it was also purchased with the intention that it be used in performing contract work for third parties in both Maine and New Hampshire. The parties agree that the tractor is "equipment" as defined by UCC Section 9–109(2).

The Debtor concedes that almost the entire property of the Province Lake Country Club is located in Maine and that the only

entrance from the highway to the country club is in Maine and that all of the structures on the premises are located in Maine. He also testified that all of his licenses are Maine licenses and that Maine sales taxes are collected and paid.

In order to draw customers to his business from nearby populous areas of New Hampshire the Debtor uses a New Hampshire mailing address. The New Hampshire mailing address is found on his business cards, advertising material and in the local and Portland, Maine area telephone directories.

The Debtor argues that because part of his golf course extends into New Hampshire and because the Debtor has consistently and intentionally identified his business as being in New Hampshire[2] the filing requirement of both Maine and New Hampshire must be complied with in order to perfect Ford's security interest in the tractor. He further argues that because Ford failed to file in both Maine and New Hampshire its interest in the property is in "bona fide" dispute. The Court must disagree with the Debtor on both Counts.

### DISCUSSION

The Debtor bases his complaint on Section 363 of the Code [11 U.S.C. § 363] which provides:

(b) The trustee, after notice and a hearing, may ... sell ..., other than in the ordinary[3] course of business, property of the estate.

.    .    .    .    .

(f) The trustee may sell property under subsection (b) ... of this section free and clear of any interest in such property of an entity other than the estate, only if—

.    .    .    .    .

(4) such interest is in bona fide dispute;
. . . .

**2.** The Debtor's statement of affairs, however, on file in this case and admitted as an exhibit in this proceeding, identifies the Debtor and his business as follows:

Michael P. Farina
d/b/a Five Chimneys Inn
and Province Lake Country

Club, Rte. 153 Parsonsfield, Maine

**3.** With exceptions that do not apply here a debtor in possession has all of the rights and powers of a trustee. 11 U.S.C. § 1107(a).

Section 363(f)(4), which is based upon cases decided under the old Bankruptcy Act, provides for the situation where adjudication of the validity, perfection, amount and priority of a lien will result in a delay detrimental to the best interests of the estate. *See* Collier, 15th Ed., ¶ 363.01[1]. In such case the Court, after a finding that "such interest is in bona fide dispute," may, over the objection of a holder of such interest, order a sale free and clear of such interest, subject to a later resolution of the dispute prior to distribution of the proceeds from the sale.

There is no bona fide dispute here. The parties agree, as they must, that Section 103 of the Uniform Commercial Code controls.[4] [11 M.R.S.A. § 9–103].

Section 9–103(3) provides:

(a) This subsection applies to . . . goods which are mobile and which are of a type normally used in more than one jurisdiction, such as . . . construction machinery . . . and the like, if the goods are equipment . . . and are not covered by a certificate of title . . .

(b) The law, including the conflict of laws rules, of the jurisdiction in which the debtor is located when the last event occurs on which is based the assertion that the security interest is perfected or unperfected governs the perfection and the effect of perfection or nonperfection of the security interest.

.     .     .     .     .

(d) A debtor shall be deemed located at his place of business if he has one, at his chief executive office if he has more than one place of business, otherwise at his residence.

The facts of this case leave no room for reasonable, or bona fide, dispute. The Debtor, on December 19, 1979, when the

security interest attached, and on December 20, 1979 when the financing statement was filed,[5] was located at his only place of business in Parsonsfield, Maine. That location continues to this date.

The Debtor's connection with New Hampshire is, at most, tangential. All of the essential functions of his business occur in Maine. Buying, selling, planning, billing, accounting and taxing all occur in Maine. Vehicles and equipment, including the tractor, are serviced, maintained and garaged in Maine.[6]

It having been determined that the Debtor was located in Maine when the last event occurred on which is based the assertion that Ford's security interest is perfected or unperfected, Section 9–103(3)(b) requires that Maine law govern the perfection and the effect of perfection or nonperfection of Ford's security interest.

Maine law provides that the proper place to perfect a security interest in equipment is "in the office of the Secretary of State." 11 M.R.S.A. § 9–401(1)(b).

■ Ford's security interest in the Debtor's tractor was, and is, properly perfected by filing a financing statement in proper form with the Maine Secretary of State.

We will now address Ford's counterclaim which seeks relief from the automatic stay.

Section 362(d) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

.     .     .     .     .

(2) with respect to a stay of an act against property, if—

---

4. Maine has adopted the 1972 revision of Section 9–103 of the Uniform Commercial Code.

5. The filing of the financing statement was the "last event on which is based the assertion that the security interest is perfected or unperfected." UCC Section 9–103(3)(b).

6. It should be observed that if we assume that the Debtor's business is a multi-state enterprise, such assumption does not aid the Debtor's cause, because, clearly, Parsonsfield, Maine, in such case would be the Debtor's "chief executive office" within the meaning of Section 103(3)(d). *See* Draftsmen's Comments to 1972 official text. U.C.C. Reporting Service, Current Materials, ¶ 9103.

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

It has been stipulated, and the evidence makes it quite clear, that the Debtor has no equity in the property. The Debtor, by his complaint, has admitted that "ownership" of the tractor is not necessary to his plan of reorganization. He argues, however, that "use" of the tractor is necessary. He proposes to sell the tractor to some person in the local area and rent it from that person from time to time as needed. The proceeds of the sale would be turned over to Ford.

The Debtor's ingenious scheme is not worthy of extended comment or analysis. It is sufficient, in the Court's view, to point out that the Debtor has not provided Ford with adequate protection for the use of the tractor until a sale is made as required, upon request, by Section 363(e); [7] nor has he demonstrated that such a future sale is possible at a price *greater* than the aggregate value of Ford's interest in the tractor as is required by Section 363(f)(3).[8] In addition, the Debtor has failed to prove, as he must, under Section 362(g)(2), that either the "ownership" or "use" of the tractor is necessary to his effective reorganization.

An appropriate order has been entered.

---

7. The Debtor has not made a payment on the tractor for several months.

8. The fair market value of the tractor is $14,000. Ford's claim exceeds $18,000.